UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **MICHELLE ANN MARTIN,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:20-CV-01519-NCC |
| | ) |
| **KILOLO KIJAKAZI,**[1] | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Michelle Ann Martin ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*. Plaintiff has filed a brief in support of the Complaint (Doc. 19) and Defendant has filed a brief in support of the Answer (Doc. 28). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 9).

### I. PROCEDURAL HISTORY

Plaintiff filed her application for SSI on August 31, 2018 (Tr. 176-81). Plaintiff was initially denied on December 4, 2018, and she filed a Request for Hearing before an

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi shall be substituted for former Commissioner Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Administrative Law Judge ("ALJ") (Tr. 107-12).  After a hearing, by decision dated February 4, 2020, the ALJ found Plaintiff not disabled (Tr. 7-11).  On August 21, 2020, the Appeals Council denied Plaintiff's request for review (Tr. 1-6).  As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since August 23, 2018, the application date (Tr. 17).  The ALJ found Plaintiff has the severe impairments of asthma, chronic obstructive pulmonary disease ("COPD"), obstructive sleep apnea, diabetes mellitus, obesity, major depressive disorder ("MDD"), generalized anxiety disorder ("GAD"), and post-traumatic stress disorder ("PTSD"), but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 17-19).  After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work[2] as defined in 20 C.F.R. § 416.967(b) except for the following nonexertional limitations that reduce Plaintiff's capacity for light work (Tr. 22).  Plaintiff can never climb ladders, ropes, or scaffolds (*Id.*).  Plaintiff must never be exposed to unprotected heights or hazardous work environments (*Id.*).  Plaintiff can no more than occasionally climb ramps or stairs (*Id.*).  Plaintiff can no more than occasionally stoop, kneel, crouch, or crawl (*Id.*).  Plaintiff

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

2

is limited to remembering and carrying out simple, routine tasks and making simple work-related decisions (*Id.*). Plaintiff cannot perform production pace tasks that require strict hourly goals (*Id.*). Plaintiff can have no more than frequent contact with supervisors (*Id.*). Plaintiff can have no more than occasional contact with co-workers or the general public (*Id.*). Plaintiff must avoid concentrated exposure to dust, fumes, or other pulmonary irritants (*Id.*). Plaintiff must avoid concentrated exposure to extreme heat, extreme cold, or humidity (*Id.*). Plaintiff must be able to be off task five percent during the workday (*Id.*). The ALJ found that Plaintiff has no past relevant work but that there are jobs that exist in significant numbers in the national economy Plaintiff could perform including router, order caller, and laundry classifier (Tr. 28-29). Thus, the ALJ concluded that Plaintiff has not been under a disability from August 23, 2018, through the date of the decision (Tr. 29-30).

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. § 416.920. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § 416.920(b). Second, the claimant must have a severe impairment. 20 C.F.R. § 416.920(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal

impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. § 416.920(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. § 416.920(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 416.920(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. § 416.920(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step

4

five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Id.* Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

### IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff asserts that the ALJ violated SSR 96-8p[3] by failing to create an RFC supported by substantial evidence (Doc. 19 at 6).[4] For the

---

[3] Social Security Rule 96-8p, 1996 WL 362207 (July 2, 1996) ("Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims").

[4] While Plaintiff's statement of her argument is fairly broad, Plaintiff raises issues only as they relate to her mental health impairments (*See generally* Doc. 19). As such, the Court will not address Plaintiff's physical impairments.

following reasons, the Court finds that Plaintiff's argument is without merit and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

RFC is the most a claimant can still do in a work setting despite that claimant's physical or mental limitations. *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (citation omitted); 20 C.F.R. § 404.1545(a)(1). An ALJ determines a claimant's RFC "based on all the relevant evidence, including medical records, observations of treating physicians and others, and [claimant's] own description of her limitations." *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). Although the ALJ bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence, "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2000) (quoting *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)). *See also Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quoting *Cox*, 495 F.3d at 619). "An administrative law judge may not draw upon [his or her] own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000).

As discussed above, here the ALJ found Plaintiff to have the following RFC limitations related to her mental health impairments. Plaintiff is limited to remembering and carrying out simple, routine tasks and making simple work-related decisions (Tr. 22). Plaintiff cannot perform production pace tasks that require strict hourly goals (*Id.*). Plaintiff can have no more than frequent contact with supervisors (*Id.*). Plaintiff can have no more than occasional contact with co-workers or the general public (*Id.*). Plaintiff must be able to be off task five percent during the workday (*Id.*).

Plaintiff specifically argues that the mental RFC is not supported by substantial evidence because there was a well-supported medical opinion that contracted the RFC, the prior administrative medical finding was inconsistent with the record as a whole, and absent the prior administrative medical finding, the ALJ failed to explain how she reached the RFC (Doc. 19 at 7). Because Plaintiff filed her application after March 27, 2017, the new Social Security regulations regarding the evaluation of medical opinion evidence applied to her case. 20 C.F.R. § 416.920c. Under the new regulations, an ALJ is no longer required to "give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," including those from treating physicians. 20 C.F.R. § 416.920c(a). Rather, the ALJ is to consider factors in determining how persuasive to find medical opinions and prior administrative medical findings. 20 C.F.R. § 416.920c(b). An ALJ must explain how she considered the factors of supportability and consistency in her decision but need not explain how she considered the other factors. 20 C.F.R. § 416.920c(b)(2). The supportability factor provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). The consistency factor states that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

On November 1, 2019, Dr. Sreekant Kodela, M.D. ("Dr. Kodela") completed a Medical Source Statement-Mental (Tr. 586-87). In the Medical Source Statement, Dr. Kodela indicates that Plaintiff has been diagnosed with major depressive disorder and would miss two days a

7

month and be off task 15% of the time at work because of her impairments (Tr. 586). Dr. Kodela opined that Plaintiff experiences drowsiness as a side effect of her medication (Tr. 586). Dr. Kodela further opined that Plaintiff was markedly limited[5] in two areas—the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and the ability to set realistic goals or make plans independently of others (Tr. 586-87). Dr. Kodela found Plaintiff was moderately limited[6] in the following areas: the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to sustain an ordinary routine without special supervision; the ability to work in coordination with or proximity to others without being distracted by them; the ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and the ability to travel in unfamiliar places or use public transportation (*Id.*). Dr. Kodela did not expand beyond the check-mark boxes on the form to explain or otherwise support her assessment (*See id.*). However, it appears medical records from Compass Health Network, the behavioral health

---

[5] "Markedly limited" is defined in the Medical Source Statement as "[m]ore than Moderate, but less than extreme resulting in limitations that seriously interferes with the ability to function independently. Considered to be 2 standard deviations below the norm, or 60% overall reduction in performance" (Tr. 586).

[6] "Moderately limited" is defined in the Medical Source Statement as "[i]mpairment levels are compatible with some, but not all, useful functioning. Considered to be 1 standard deviation below the norm, or 30% overall reduction in performance" (*Id.*).

8

organization where Dr. Kodela practices, were filed concurrently with the opinion (*See* Tr. 588-686).

In accordance with the standard set forth in 20 C.F.R. § 416.920c(b)(2), the ALJ found Dr. Kodela's opinion "unpersuasive" because it was in check-box format without inclusion of supportive reasoning or clinical findings (Tr. 27).  Contrary to Plaintiff assertion, an ALJ is permitted to consider the opinion's format.  *See* 20 C.F.R. § 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)…the more persuasive the medical opinions…will be."); *see also Kraus v. Saul*, 988 F.3d 1019, 1025 (8th Cir. 2021) (finding the ALJ properly discounted an opinion where it was rendered on a checkbox form with no explanation or citation to supporting medical findings).  The ALJ also found the opinion to be inconsistent with Dr. Kodela's own treatment notes as his notes generally reflected stable, conservative treatment without extreme or escalating treatment modalities to support the "extreme limitations" indicate by his opinion (Tr. 27).  Upon review of the limited record from Dr. Kodela, the Court concurs with the ALJ's assessment.  For example, at an October 2019 visit with Dr. Kodela, while he noted Plaintiff "acknowledge chronic anxiety and depression," he found that she did not have any paranoia or delusional beliefs, that her perceptions were normal, she was oriented to time, place and person, her attention was normal, her concentration sustained, her judgment appeared adequate, and that her insight seemed preserved as to diagnosis, prescriptions, and legal responsibilities (Tr. 633). *See also* Tr. 834 (finding the same during her initial, May 2019 visit).  The ALJ additionally found the opinion not fully consistent with the medical evidence as a whole as the evidence did not reflect a pattern of treatment and mental status examinations that would support the limitations in the opinion (Tr. 27).  Indeed, as noted by the ALJ elsewhere in the opinion and

9

detailed below, the record as a whole indicates a pattern of consistent, yet conservative, treatment for Plaintiff's mental health impairments with fairly normal examinations on the whole.

The ALJ also properly considered the prior administrative findings from state agency psychiatric consultant, Kim Dempsey, Psy.D. ("Dr. Dempsey").  On November 29, 2018, Dr. Dempsey completed a review of Plaintiff's medical record and determined that Plaintiff had moderate limitations in her ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself (Tr. 93). Dr. Dempsey found Plaintiff to be moderately limited in her ability to understand and remember detailed instructions; her ability to carry out detailed instructions; her ability to maintain attention and concentration for extended periods; her ability to interact appropriately with the general public; and her ability to respond appropriately to changes in the work setting (Tr. 98-100).  Otherwise, Dr. Dempsey found Plaintiff not to be significantly limited in all other areas (*Id.*).  In support of her assessment, Dr. Dempsey provided a detailed 6-paragraph narrative explanation (Tr. 93-94).  The ALJ found Dr. Dempsey's opinion to be persuasive as her findings "are corroborated by a lengthy explanation with numerous references to and discussion of the medical record of evidence" and are "generally consistent with the medical evidence of record" (Tr. 27).  The ALJ specifically noted that Dr. Dempsey's opinion was consistent with Plaintiff's "conservative but consistent pattern of treatment and mental status examinations" (Tr. 27). Plaintiff argues that the consultant's opinion was based on evidence through October 2018 that did not reflect the longitudinal record (Doc. 19 at 11).  Indeed, the ALJ noted that Dr. Dempsey's explanation only references the evidence through December 2018 which, "typically, would [] not support their persuasiveness," but as the ALJ noted, "the medical record of evidence reflects that

10

[Plaintiff's] treatment was stable and consistent without evidence of significant worsening after Dr. Dempsey rendered her opinions" (Tr. 27).  *See Denoyer v. Saul,* No. 4:19 CV 2388 DDN, 2020 WL 3892991, at *6 (E.D. Mo. July 10, 2020) (finding no error in the ALJ's reliance on agency opinions when the ALJ evaluated the opinions within the record as a whole, to include evidence received after the opinions were issued).  While Plaintiff cites to other records that support Plaintiff's allegations to the contrary, "[i]f substantial evidence supports the decision, then we may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if we may have reached a different outcome."  *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

To the extent Plaintiff appears to assert that the ALJ mistakenly failed to support her RFC determination with a medical opinion, "there is no requirement that an RFC finding be supported by a specific medical opinion."  *Hensley*, 829 F.3d at 932.  "'Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.'"  *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018) (quoting *Cox*, 495 F.3d at 619-20).

In addition to properly addressing the medical opinions detailed above regarding Plaintiff's mental health impairments, the ALJ conducted a full overview and analysis of the medical record (Tr. 23-26).  In conducting this evaluation of the medical record, the ALJ noted Plaintiff's relatively conservative treatment for her mental health impairments, stating:

> [Plaintiff] has no history of being inpatient hospitalized for a mental impairment, she has demonstrated no significant recurrent suicidal or homicidal ideation, has a remote history of suicide attempts but has routinely denied suicidal ideation during the alleged period, and has not reported persistent suicidal or homicidal ideation.

(Tr. 24).  The ALJ found that Plaintiff's relatively frequent community support treatment provides "the most persuasive support" for the Plaintiff's statements concerning her symptoms

(Tr. 24-25). However, the ALJ indicated that Plaintiff's treatment notes "did not reflect out of control symptoms or a lack of responsiveness to treatment" and that Plaintiff was "only rarely seen by a psychiatrist, which also supports that her symptoms were generally stable" (Tr. 25). Evidence of an individual's clinical course as well as the type, duration, and effects of therapy are relevant and within the ALJ's purview when considering how a claimant's mental disorder affects her ability to function in the workplace. *Fogal v. Saul*, No. 4:18-CV-1949 RLW, 2020 WL 6743191, at *11 (E.D. Mo. Nov. 17, 2020) (finding that conservative treatment is a proper consideration when assessing the RFC). The ALJ also detailed Plaintiff's relatively normal mental health status examinations and specifically noted that while Plaintiff reported frequent panic attacks, that the record does not reflect regular reports to her mental health specialists or frequent treatment for anxiety episodes (Tr. 25). Indeed, Plaintiff's mental health records show generally normal mental status evaluations. Specifically, while Plaintiff was assessed as having moderately severe depression and was diagnosed as having major depressive disorder, Plaintiff was noted as having linear and goal directed thought processes; as having normal attention span; to be oriented to person, place, time, and situation; to be alert; as having fair insight and judgment; as having good hygiene; and dressing appropriately (Tr. 315, 477, 479, 482, 491, 500, 503, 505, 506, 508, 525, 527, 550, 598-99, 617, 632-33, 712, 740, 760, 782, 833-34, 877). As for medication management, while the record indicates Plaintiff's frequent changes in her course of prescription medication treatment, the record also reflects a pattern of Plaintiff choosing not to proceed with a course of medication management despite medical advice to the contrary and discontinuing prescriptions frequently without first seeking medical advice largely due to a limited tolerance to side effects (*See* Tr. 305-06, 575).

12

The ALJ also properly reviewed Plaintiff's activities of daily living. The ALJ properly summarized Plaintiff's hearing testimony in which indicated that she has chronic depression and lives by herself (Tr. 23). The ALJ further noted Plaintiff's testimony that her depressive symptoms make her not want to leave the house and she suffers from: mood swings, crying spells, has trouble with focus and concentration, and does not like crowds and gets anxious (*Id.*). However, the ALJ found Plaintiff's reported limitations not to be consistent with her self-reported activities of daily living (Tr. 26). Specifically, the ALJ indicated that the only problem Plaintiff reported with her personal care was difficulty reaching her feet to trim her toenails (Tr. 219). The ALJ then proceeded to list an extensive list of things Plaintiff indicated she could do. For example, Plaintiff reported that she could prepare simple meals, launder, vacuum, wash dishes, go outside, walk, go shopping, read and understand paperwork, and manage her finances (Tr. 26, 54, 220-25, 601). *See also* Tr. 230-34 (third party function report further indicating Plaintiff's ability to address her own personal care needs, do her own cleaning and laundry, make meals, and get along with others); Tr. 465 ("[Plaintiff] says she does go shopping every week with a friend and that helps."). Indeed, Plaintiff reported that her asthma and COPD were triggered by weather changes, vacuuming, and mowing the lawn (Tr. 394). Further, at the time of the administrative hearing, Plaintiff was seeking out vocational services and had begun working for Choices for People (Tr. 56). *See also* Tr. 588 ("[P]laintiff says she is meeting with Voc Rehab to take a test to determine the type of job she would be good at."). The ALJ concluded, "[w]hile each particular daily activity on its own may not specifically indicate a certain level of functioning, the evidence regarding the [Plaintiff's] cumulative daily activities are not fully consistent with the [Plaintiff's] statements concerning the intensity, persistence and

13

limiting effects of her symptom[s] but are consistent with the determined residual functional capacity" (Tr. 26).

While the undersigned appreciates that a claimant need not be bedridden before she can be determined to be disabled, a claimant's daily activities can nonetheless be seen as inconsistent with her subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. *See Wright v. Colvin*, 789 F.3d 847, 854 (8th Cir. 2015) ("Wright himself admits to engaging in daily activities that this court has previously found inconsistent with disabling pain, such as driving, shopping, bathing, and cooking."); *McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013) (determining that the ALJ properly discounted plaintiff's credibility where, among other factors, plaintiff "was not unduly restricted in his daily activities, which included the ability to perform some cooking, tak[ing] care of his dogs, us[ing] a computer, driv[ing] with a neck brace, and shop[ping] for groceries with the use of an electric cart"); *Buckner v. Astrue*, 646 F.3d 549, 555 (8th Cir. 2011) (finding plaintiff's depression was not severe where plaintiff engaged in daily activities that were inconsistent with his allegations). *See also Ponders v. Colvin*, 770 F.3d 1190 (8th Cir. 2014) (holding that substantial evidence supported the ALJ's denial of disability benefits in part because claimant "performs light housework, washes dishes, cooks for her family, does laundry, can handle money and pays bills, shops for groceries and clothing, watches television, drives a vehicle, leaves her house alone, regularly attends church, and visits her family"); *Roberson v. Astrue*, 481 F.3d, 1020, 1025 (8th Cir. 2007) (holding that the ALJ's denial of benefits was supported based in part because Plaintiff fixed meals, did housework, shopped for grocers, and visited friends). Furthermore, Plaintiff's activities of daily living were just one of several matters the ALJ considered when evaluating Plaintiff's subjective complaints and formulating Plaintiff's RFC.

14

Finally, contrary to Plaintiff's assertion, the ALJ also properly provided a narrative discussion as to how the evidence supports the ALJ's RFC determination. Specifically, the ALJ stated:

> Although the objective medical evidence supporting the claimant's allegations was not fully supportive and the claimant's subjective complaints were not entirely consistent with the evidence of record, the undersigned has given the claimant's allegations as much weight as could be supported by the evidence of record regarding her physical limitations and have limited the claimant to work at the light exertional level. The claimant's physical impairments combine to limit her ability to climb, stoop, kneel, crouch, crawl, and work in certain environments. The claimant breathing difficulties limit her ability to work around pulmonary irritants. A combination of the claimant's mental symptoms limits her ability to carry out greater than simple instructions and interact with others. Further restrictions are not supported by the diagnostic testing, the claimant's pattern of treatment, or her mental and physical examinations and the claimant's allegations regarding her subjective complaints was not fully consistent with the evidence of record as discussed above. The extent of her alleged functional limitations, as set forth above, are not supported by the medical treatment records in evidence, the most probative of which are set forth above. The evidence of record shows that the claimant is capable of performing a range of light work with the limitations set forth in her determined residual functional capacity.

(Tr. 28). *See* Social Security Ruling 96-8p, 1996 WL 374184 at *7 (July 2, 1996); *Garrison v. Astrue*, No. 4:11CV1503 FRB, 2012 WL 4336202, at *15 (E.D. Mo. Sept. 21, 2012) (noting that neither the Eighth Circuit nor SSR 96-8p requires the RFC to be presented in "rigid" or "bullet-point format with each limitation immediately followed by a discussion of the supporting evidence"). Again, coupled with the detailed review of Plaintiff's medical record, the medical opinion evidence of record, and the ALJ's evaluation of Plaintiff's subjective complaints, the Court finds that the ALJ properly provided a narrative explanation for her RFC determination.

In conclusion, the Court finds the ALJ's RFC determination to be based on substantial evidence and is consistent with Regulations and case law.

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED**, with prejudice.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 4th day of March, 2022.

                                              /s/ Noelle C. Collins
                                              NOELLE C. COLLINS
                                              UNITED STATES MAGISTRATE JUDGE